DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

NAPLES ESTATES LIMITED PARTNERSHIP,

Appellant,

v.

PAMELA MUSTON; WILLIAM BAILIE; and
UNKNOWN/UNAUTHORIZED OCCUPANT(S),

Appellees.

No. 2D20-1352

_____

September 10, 2021

Appeal from the Circuit Court for Collier County; Joseph G. Foster,
Judge.

Jody B. Gabel and J. Allen Bobo of Lutz, Bobo & Telfair, P.A.,
Sarasota, for Appellant.

Donald E. Christopher of Baker Donelson Bearman Caldwell &
Berkowitz, PC, Orlando, for Appellees Pamela Muston and William
Bailie.

No appearance for remaining Appellees.

ATKINSON, Judge.

Naples Estates Limited Partnership (Naples Estates) appeals the amount of damages it was awarded in a second amended final judgment of damages (the Judgment) entered in its favor against Pamela Muston and William Bailie, mobile park home owners (Home Owners), who elected to continue to pay the original amount of rent notwithstanding an order entered in another case to which they were not named parties. That order (the Rent Order) stated in pertinent part:

> 1. During the pendency of this action, some homeowners of Naples Estates Mobile Home Park ("Participating Homeowners") represented by Naples Estates Homeowners Association, Inc. (the "Association") have contested the lot rental amount charged by Naples Estates Limited Partnership ("Owner") and have refused to pay a portion of each Participating Homeowner's monthly lot rental amount as defined in Section 723.003(2), Florida Statutes. The disputed rents are the difference between what a Participating Homeowner has paid monthly since May 1, 2007 and six hundred dollars ($600) per lot per month for standard lots and six hundred ten dollars ($610) per lot per month for premium lots (the "Disputed Funds"). . . .

> 3. Each Participating Homeowner shall pay their portion of the Disputed Funds into the Court Registry on or before 09 September 2013. Time is of the essence. A failure to timely deposit all Disputed Funds shall be deemed a default of this order.

> 4. Any Participating Homeowner in default of this order shall not be eligible for membership in any putative

class which may be approved in this action; shall be subject to eviction pursuant to the proceedings set forth in Section 723.061, Florida Statutes; and shall be deemed to have waived any defenses, other than payment, in any eviction action based upon such default as set forth in Section 723.062(2), Florida Statutes.

In compliance with paragraph 3 of the order, on September 9, 2013, the Home Owners made an initial payment into the registry of $8,645.76—the difference between $600 per month and what they had paid per month from May 1, 2007, to September 1, 2013. However, they then continued to pay the amount that she contended was due, as opposed to the $600 per month that Naples Estates claimed they owed, which Naples Estates accepted until October 1, 2015.

On October 28, 2015, Naples Estates sued the Home Owners for eviction and damages (eviction action). Prior to instituting the suit, Naples Estates mailed the Home Owners a letter pursuant to section 723.061(1)(a), Florida Statutes (2015), demanding that they remit $4,569.73 for the difference between what they paid during the preceding twenty-four months and the $600 per month that Naples Estates stated they owed.

Pursuant to an order entered by the court in the eviction action, the Home Owners deposited $11,169.73 into the court registry, representing the total amount in Naples Estates' demand letter plus monthly rent of $600 from the date of the filing of the complaint through August 31, 2016. The court indicated that it would reserve ruling on the issue of whether Naples Estates "waived the right to collect rents for all months prior to filing the Complaint in which Defendants tendered a rental payment to Plaintiff that Plaintiff accepted without objection or exception." The court further indicated that it would return a portion of the funds deposited into the registry if the court determined at trial that waiver occurred or "that a different amount of monthly rent, less than the $600.00 demanded by the Plaintiff was reasonable." Thereafter, the Home Owners continued to pay $600 each month into the court registry.

After a trial, the court awarded Naples Estates $30,600, for the rent for the period from October 2015 through December 2019. It directed the Clerk to disburse the balance of the funds in the court registry to the Home Owners.

Naples Estates argues on appeal that the trial court erred by failing to award it $4,569.73 (the full $600 per month that the

Home Owners failed to pay during the twenty-four months before it filed suit). Although not explicitly articulated in the sparsely worded Judgment, it is apparent from the record, including the amount awarded and the Home Owners' written closing, that the trial court credited the Home Owners' defense of waiver and estoppel. The Home Owners argued below, and now argue on appeal, that Naples Estates waived the right to collect the entire $600 per month from them during the twenty-four months prior to the eviction action because it accepted their payments of lesser sums during that time.

Naples Estates asserts that the Home Owners waived their right to assert defenses other than payment, such as waiver and estoppel, because they failed to deposit the disputed rent from October 2013 through October 2015. Section 723.063, Florida Statutes (2015) governs a mobile home owner's defenses to an action for rent or possession and states, in pertinent part, "In any action based upon nonpayment of rent or seeking to recover unpaid rent, or a portion thereof, the mobile home owner may defend upon the ground of a material noncompliance with any portion of this chapter or may raise any other defense, whether legal or equitable,

5

which he or she may have." *See* § 723.063(1).  To raise these defenses, the mobile home owner must pay the disputed rent into the court registry.

> (2) In any action by the park owner or a mobile home owner brought under subsection (1), the mobile home owner shall pay into the registry of the court that portion of the accrued rent, if any, relating to the claim of material noncompliance as alleged in the complaint, or as determined by the court.  The court shall notify the mobile home owner of such requirement.  The failure of the mobile home owner to pay the rent, or portion thereof, into the registry of the court as required herein constitutes an absolute waiver of the mobile home owner's defenses other than payment, and the park owner is entitled to an immediate default.

§ 723.063(2).  It is apparent from the introductory clause, "In any action by the park owner . . . brought under subsection (1)," that the rent deposit requirement did not begin until the eviction action against the Home Owners had commenced, after which point the Home Owners did deposit the requisite amount.

However, although not waived by a failure to comply with section 723.063(2), the Home Owners' waiver and estoppel defense is unavailing.  In order for a waiver to occur there must be: (1) a right, privilege, or benefit that existed at the time of the waiver and which may be waived; (2) the actual or constructive knowledge of

6

that right, privilege, or benefit; and (3) an intention to relinquish that right, privilege, or benefit. *See Arbogast v. Bryan*, 393 So. 2d 606, 608 (Fla. 4th DCA 1981). A waiver may be "implied from conduct, the acts, conduct, or circumstances," but it "does not arise from forbearance for a reasonable time." *Fireman's Fund Ins. Co. v. Vogel*, 195 So. 2d 20, 24 (Fla. 2d DCA 1967).

Naples Estates accepted direct payments from the Home Owners for less than the full $600 rent for twenty-four months preceding the eviction action. The Home Owners were fully aware during this time that Naples Estates was contending that the proper amount of rent was $600. Naples Estates had served the Home Owners with a copy of the Rent Order—which required payment of the disputed portion of the rent into the court registry. And the Home Owners complied with its directive by making a payment of $8,645.76 into the court registry.

The Home Owners argue that the Rent Order only directed a single payment of the disputed rents from May 2007 through September 2013. They contend that it did not create a continuing obligation to deposit the $600 per month. But that interpretive dispute about the Rent Order's language is no more important than

the now irrelevant question of whether it should have been binding on the Home Owners even though they were purported strangers to the litigation in which it was entered. What is relevant is that they were made aware that Naples Estates was charging them $600 per month, a rate that the trial court ultimately approved in the case brought against them individually.

Muston admitted at trial that she knowingly paid less than the amount required under the Rent Order prior to the pendency of the eviction action. And although it received less than the amount it contended that it was owed during the twenty-four months, Naples Estates was operating under the reasonable presumption that the balance was being paid into the registry. Under these circumstances, by accepting less than the full amount, Naples Estates did not knowingly relinquish its right to the full amount— the difference between the two being the subject of the ongoing litigation of which both parties were very much aware. *See Arbogast*, 393 So. 2d at 607 ("Waiver is the intentional relinquishment of a known right, or the voluntary relinquishment of

a known right, or conduct which warrants an inference of the relinquishment of a known right.").[1]

The record justifies no conclusion other than that the trial court denied Naples Estates the difference in rent during the twenty-four-month period based on an erroneous finding of waiver and estoppel. In their written closing, the Home Owners concede that they "owe[d] [Naples Estates] rent at the rate of $600 per month for all months since filing of the eviction lawsuit." And the trial court ultimately approved of the $600 rate. In other words, but for the waiver and estoppel defense, the Home Owners owed the entire $600 following the issuance of the Rent Order.

As such, we need not address the Home Owners' contention that the Rent Order did not bind them because it was entered in a case to which they were not parties. We need not reach the questions of whether the Home Owners were part of the class or

---

[1] Equally unavailing for these reasons is the Home Owners' argument that the parties' course of dealings established that the rent during the twenty-four-month period was what Naples Estates accepted from the Home Owners, not the $600. The suggestion that an oral lease was created by Naples Estates' acceptance of a lesser amount with the understanding that the difference between that and the demanded amount would be deposited in the registry during an ongoing dispute about the proper amount defies logic.

whether they were statutorily bound by the association as their representative. *See* §§ 723.075(1) ("Upon incorporation and service of the notice described in s. 723.076, the association shall become the representative of all the mobile home owners in all matters relating to this chapter, regardless of whether the homeowner is a member of the association."), .037(1) ("The homeowners' association shall have no standing to challenge the increase in lot rental amount, reduction in services or utilities, or change of rules and regulations unless a majority of the affected homeowners agree, in writing, to such representation.").

By the time Naples Estates filed suit against the Home Owners, they had already been on notice that the landlord was charging them more rent than they thought they owed and had been demanding it for at least the twenty-four months in question before the time of filing suit. At that point, the parties were in a run-of-the-mill rent dispute, and Naples Estates' actions for breach of lease and damages for unpaid rent were not necessarily reliant on the validity of the Rent Order itself.[2] The landlord made it clear

---

[2] Naples Estates also argued that the per curiam affirmance of the Rent Order, *Naples Estates Homeowners Ass'n, Inc. v. Naples*

10

it expected rent at a specified rate; the tenants disagreed that was what they owed. Ultimately the trial court concluded that the amount of rent due to Naples Estates was the $600 per month that Naples Estates had charged but the Home Owners had not paid.

There is nothing in the record to indicate that the trial court found the $600 rental rate unenforceable during the twenty-four-month period. Indeed, the trial court lacked discretion to award a lower amount of rent absent a finding that the rate was unreasonable. Section 723.033(1) authorizes the trial court to refuse to enforce the rent increase if it finds, as a matter of law, that "a mobile home lot rental amount, rent increase, or change, or any provision of the rental agreement, to be unreasonable." It also

---

*Estates Limited Partnership*, 137 So. 3d 385 (Fla. 2d DCA 2014), constitutes law of the case and confirms the validity and enforceability of the Rents Order for purposes of this appeal. We need not address Naples Estates' argument—based on *Hollywood Mobile Estates Ltd. v. Hollywood Estates Independent Tenants Ass'n*, 67 So. 3d 1194, 1196 (Fla. 4th DCA 2011)—that the home owners were real parties in interest in the case in which the Rents Order was entered. Even if they were, the appeal from that case could not constitute law of the case because it was from a separate lawsuit. *Cf. TRW Auto. U.S. LLC v. Papandopoles*, 949 So. 2d 297, 301 (Fla. 4th DCA 2007) ("This court's ruling in *Nowell* cannot be the law of the case in *Papandopoles* and *Yampa* because they are separate lawsuits involving different claims, raised by different plaintiffs, and arising out of different accidents.").

authorizes the court to provide "such other equitable relief as deemed necessary." *Id.* However, the amount is only unreasonable under 723.033(3) if it "is in excess of market rent." There was no evidence presented at trial concerning whether the rent in the twenty-four months before the eviction action was consistent with the market rent. And the trial court's approval of prospective rent at that rate dispels any ongoing debate as to its reasonableness. Nor is there—or was there ever in Naples Estates' case against the Home Owners—any debate about Naples Estates' compliance with the other statutory requirements for raising rent. *See generally* §§ 723.033, .037, and .038, Fla. Stat. (2007).

This is a rent dispute in which Naples Estates dispositively established the amount of rent the Home Owners were required to pay, and the defense of waiver and estoppel did not excuse their obligation to do so. Because the Home Owners owed the full rent in the twenty-four months preceding the eviction action, the trial court erred in failing to award Naples Estates the additional $4,569.73 that the Home Owners paid into the court registry.

Reversed in part and remanded.

VILLANTI and ROTHSTEIN-YOUAKIM, JJ., Concur.

12

_____

Opinion subject to revision prior to official publication.